ASHER BRONSTIN
211 S State College Blvd #10177,
Anaheim, CA 92806
(949) 996-7205
Legal@BronstinHoldings.com
PLAINTIFF, IN PROPER PERSON

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ASHER BRONSTIN,**<br><br>Plaintiff,<br><br>vs.<br><br>**EZ ADVANCE LLC and JOHN DOE 1-10**<br><br>Defendant(s). | Case No.:<br><br>**COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES FOR VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT**<br><br>**DEMAND FOR JURY TRIAL** |

## I. PRELIMINARY STATEMENT

1. I, the Plaintiff ASHER BRONSTIN, bring this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted to restrict Telemarketing, as defined by 47 C.F.R. § 64.1200(f)(13).

2. The allegations arise from the repeated Non-Consensual Telephone Solicitations made to me, despite my Telephone Number being listed on the National-Do-Not-Call-Registry. I have suffered significant harm and ongoing inconvenience as a result and seeks to hold DEFENDANT EZ ADVANCE LLC and DEFENDANTS JOHN DOE 1-10 accountable for their actions by recovering statutory damages as provided for under the Telephone Consumer Protection Act and obtain appropriate injunctive relief to prevent future violations.

3. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." Barr v. Am. Ass'n of Political Consultants, 140 S. Ct. 2335, 2343 (2020).

4. However, the TCPA doesn't only restrict robocalls.

5. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

intrusive, nuisance calls to their homes from telemarketers' id. § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' id. § 2(9).

6.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the National Do-Not-Call Registry. *See 47 C.F.R. § 64.1200(c)(2)*. Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call Registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive Telephone Solicitations, he can add his number to the list. The TCPA then restricts the Telephone Solicitations that can be made to that number. See id.; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. Id…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649-50 (4th Cir. 2019).

## **II. PARTIES**

7.      PLAINTIFF ASHER BRONSTIN (hereafter referred to as "PLAINTIFF"), who at all times mentioned herein, is a natural person as defined by 47 U.S.C. § 153(39), and a citizen of the United States of America.

8.      DEFENDANT EZ ADVANCE LLC (hereafter referred to as "DEFENDANT"), who upon information

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

and belief, a New York limited liability company , with its address to which any Service of Process can be made at 18032 Union Tpke, Fresh Meadows, NY, United States, 11366.

9.  DEFENDANTS JOHN DOE 1-10, who are parties, persons or entities of unknown citizenship, and who may have authorized, directed or participated in consummating the acts complained herein, and/or who may be subject to legal responsibility for the conduct and damages in this action. PLAINTIFF will seek leave of this Court to insert true names and capacities once they have been ascertained.

## III. JURISDICTION AND VENUE

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because PLAINTIFF'S claims arise under federal law.

11. The Court has Personal Jurisdiction over DEFENDANT because they are incorporated in New York and are located in this District.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because DEFENDANT "resides" in this District.

## IV. APPLICABLE LAW

**a. FEDERAL LAW; THE TCPA & ITS IMPLEMENTING RULES AND REGULATIONS**

13. Due to the rising number of consumer complaints regarding telemarketing practices, in 1991 Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect the privacy interests of telephone subscribers by placing restrictions on unsolicited advertising from telemarketing. *See 47 U.S.C. § 227.*

14. 47 U.S.C. § 227(c)(1) of the TCPA requires the FCC to *"initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving Telephone Solicitations to which they object." See 47 U.S.C. § 227(c)(1).* Pursuant to this, the Do-Not-Call Implementation Act of 2003 and the Do-Not-Call Improvement Act of 2007 ("National DNC") was

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

established which is a database listing the telephone numbers of consumers who have opted out of Non-Consensual Telephone Solicitations, as outlined in 47 C.F.R. § 64.1200(c)(2). It is also important to emphasize that under the TCPA, as confirmed by the Supreme Court in Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 153 (2016) "*text messages*" are synonymous with "*calls*", thus, both falling within the definition of Telephone Solicitations for the purposes of the TCPA. Further, the FCC's recent amendments explicitly extend the prohibition on initiating Telephone Solicitations to telephone numbers listed with the National DNC to include "text messages". *See 47 C.F.R. § 64.1200(e).*

15. The National DNC provides an outlet for consumers to assert their right to privacy by preemptively opting out of Non-Consensual Telephone Solicitations. By listing their numbers with the National DNC, it establishes the requirement of consent. Specifically, for Telemarketers to first obtain consumers' Prior Express Written Consent. It's worth emphasizing that the rule clearly mandates said consent "*...must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed*". *See 47 C.F.R. § 64.1200(c)(2)(ii).* The law also provides further clarification that "*A residential telephone subscriber who has registered his or her telephone number on the National DNC of persons who do not wish to receive Telephone Solicitations that is maintained by the Federal Government. Such numbers listed with the National DNCs must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.*" *See 47 C.F.R. § 64.1200(c)(2).*

16. Delivery Restrictions of the TCPA makes it illegal for persons or entities to initiate a Telephone Solicitation, either made by or on behalf of that person or entity, unless such person or entity has instituted procedures meeting the minimum standards as outlined under said law. *See 47 C.F.R. 64.1200(d).* These minimum standards include: (1) a written DNC policy, available upon demand (2)

training personnel on said written DNC policy (3) honoring consumers Directives to Cease and Desist Telephone Solicitations and to record such directives on their Internal Do-Not-Call list, (hereafter "Internal DNC") at the time the request was made.  If the call was made on behalf of a person or entity, the business or entity for whom the call was placed shall be held liable for any failure to honor such request and (4) at the onset of the Telephone Solicitation, providing the consumer the Telemarketers name, the name of the person or entity on whose behalf the call is being made, and valid contact details. Failure to meet these minimum standards constitutes additional violations of the TCPA, as outlined in 47 C.F.R. § 64.1200(c) and (d) and demonstrated in Perrong v. All Star Chimney Solutions, Inc., 1:21-cv-10084., D. Mass. (2021).

17. Telemarketers are obligated to provide specific oral disclosures at the onset of Telephone Solicitations. This includes, but is not limited to, the identity of the seller or the Telemarketer. Failure to disclose this information truthfully, promptly, and in a clear and conspicuous manner constitutes an *Abusive Telemarketing Act or Practice* which is a violation of the Telemarketing Sales Rule (hereafter referred as  "TSR") portion of the TCPA. *See 16 C.F.R § 310.4(d).*

18. These requirements are further detailed  under the Delivery Restrictions section of the TCPA, stipulating that any person or entity initiating a Telephone Solicitation must provide the called party with the name of the individual calling, the name of the person or entity on whose behalf the call is being made, and a Telephone Number or address at which the person or entity may be contacted. *See 47 C.F.R. § 64.1200(d)(4).*

19. The TCPA prohibits the transmission of inaccurate or misleading caller identification information. The TCPA requires that caller identification shall include the telemarketer's name and the identity of its carrier, as well as a telephone number which a recipient may call to submit a do-not-call request during regular business hours. As demonstrated in Newell v. JR Capital, (E.D. Pa. 2025), the failure to provide

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

accurate caller identification information gives rise to a private right of action and entitles the aggrieved party to statutory damages. *See 47 C.F.R. § 64.1601(e)(1).*

20. Under the TCPA, corporate officers and employees may be held personally liable for violations of the TCPA if they directly participate in, authorize, or knowingly allow illegal Telemarketing practices. Courts have consistently ruled that individuals cannot shield themselves from liability merely by operating through a corporate entity. Texas v. American Blastfax 164 F. Supp. 2d 892, W.D. Tex. (2001); Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities, Inc., 747 F.3d 489, N.D. Ill (2014). The TCPA explicitly prohibits not just businesses but also individuals from making Telephone Solicitations to telephone numbers listed on the National DNC without Prior Express Written Consent. Courts have ruled that a Telemarketer's personal involvement in making illegal calls creates direct liability, even if they are employees rather than corporate officers. See Robin Black v. First Impression Interactive, Inc., No. 1:21-cv-03745, N.D. Ill. (2022).

21. To enforce the protection of consumers' right to privacy, the TCPA establishes a Private Right of Action where the law provides statutory damages against any persons or entities that make Non-Consensual Telephone Solicitations or on whose behalf such Telephone Solicitations are made. *See 47 C.F.R. § 64.1200(C)(2).* Specifically, the TCPA authorizes consumers to bring *"an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater." See 47 U.S.C. § 227(c)(5)(B).*

22. Moreover, any person or entities found to have willfully or knowingly violated the TCPA shall be held liable for statutory damages of up to $1,500 per violation. *See 47 U.S.C. § 227(c)(5)(C).*

23. Under the TSR, Telemarketers are prohibited from engaging in deceptive, misleading or abusive acts or practices, while simultaneously being mandated to maintain certain records. *See 16 C.F.R 310.* Compliance with these regulations is enforced by the Federal Trade Commission ("FTC").   16 CFR

310.3 of the TSR prohibits *Deceptive Telemarketing Acts or Practices,* including making false claims about products or services, misrepresenting prizes, and creating false urgency to pressure consumers. Misrepresentation of material information, misleading claims about prizes, and impersonating trusted organizations are prohibited. In fact, Telemarketers are required to disclose clear and accurate information, such as the full cost of products and any material restrictions or cancellation terms, ensuring consumers can make informed decisions. *See 16 CFR 310.3.* 16 CFR 310.4 of the TSR prohibits *Abusive Telemarketing Acts or Practices* that harass or coerce consumers such as threat, intimidation, or profane language during Telephone Solicitations, as well as high-pressure sales tactics. The TSR also prohibits practices such as abandoning calls, which occur when Telemarketers disconnect or fails to connect the call to a live agent or prerecorded message after a consumer answers. Other tactics, such as repeated calls with intent to annoy, abuse, or harass consumers, or not complying with consumers Directives to Cease and Desist Telephone Solicitations is deemed harmful and abusive, which the TSR aims to protect consumers from. Additionally, the TSR imposes *Recordkeeping Requirements* on Telemarketers to ensure compliance, particularly regarding the National DNC. Telemarketers must maintain accurate records of all consumer interactions, including consent to contact, handling of opt-outs, any required disclosures, and any received Directives to Cease and Desist Telephone Solicitations. *See 16 CFR 310.5.* Moreover, any opt-outs or Directives to Cease and Desist Telephone Solicitations must be recorded in detail, including the consumer's names and numbers, to a maintained Internal DNC to certify that Telemarketers are not contacting individuals on said Internal DNC, with records being maintained and available for review by regulators to certify compliance and protect consumers' rights, for a minimum of 24 months. *See 16 C.F.R 310.4.* Non-compliance with these regulations warrants investigation by the Federal Trade Commission's ("FTC") and imposition of civil penalties of up to $50,120 per violation. *See 15 U.S.C § 45(m)(1)(A) as modified by 28 U.S.C. § 2461,*

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

*as amended and implemented by 16 C.F.R. § 1.98(d).*

## V. FACTUAL ALLEGATIONS

**a. FACTS OF TELEPHONE SOLICITATIONS**

24. PLAINTIFF'S telephone number is (714) XXX-XXX (hereafter referred to as "PLAINTIFF'S Telephone Number")

25. PLAINTIFF'S Telephone Number has been listed on the National DNC since 02-23-21.

26. PLAINTIFF personally listed their Telephone Number on the National DNC, and has not removed it from the National DNC since that time.

27. PLAINTIFF'S Telephone Number is used as a residential line and for residential purposes.

28. Telephone Solicitations were made without PLAINTIFF'S Prior Express Written Consent.

**b. DETAILS OF TELEPHONE SOLICITATIONS**

29. As of the writing of this Complaint, PLAINTIFF has received at least twenty (20) Non-Consensual Telephone Solicitations.

30. The Telephone Solicitations were for a loan.

31. On 08-21-24 DEFENDANT'S representatives began placing Telephone Solicitation to PLAINTIFF from 516-969-8322.

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES



A.

32. DEFENDANT'S representatives failed to identify the entity they represented, in violation of the law. *See 16 C.F.R. 310.4(d) and 47 C.F.R. 64.1200(d)(4).*

33. For this reason, PLAINTIFF provided an email solely to ascertain the legal identity of the entity behind the Telephone Solicitations described herein, tracking and preserved call and text message

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

logs, which confirm a systematic and continued disregard for the TCPA. PLAINTIFF had no intent to purchase any product or service from DEFENDANT.

34. To determine who the Telephone Solicitations were from, PLAINTIFF provided an email solely to identify the entity.

35. On 09-12-24 the email was received, which identified the entity.

A.

36. On 09-12-24 PLAINTIFF replied "STOP" to DEFENDANT'S text messages, to which DEFENDANT confirmed "You have successfully been unsubscribed. You will not receive any more

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

messages from this number. Reply START to resubscribe.".



A.

37. On 10-09-24, despite DEFENDANT'S written confirmation of PLAINTIFF'S Directive to Cease and Desist, DEFENDANT'S representatives resumed making Non-Consensual Telephone Solicitations to PLAINTIFF, again failing to identify the entity they represented, in violation of the law. *See 16 C.F.R. 310.4(d) and 47 C.F.R. 64.1200(d)(4).*

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES



A.

38. PLAINTIFF subsequently issued multiple written demands to Cease and Desist Telephone Solicitations via email.

39. Despite this, PLAINTIFF continued to receive Non-Consensual Telephone Solicitations from DEFENDANT'S REPRESENTATIVES.

40. PLAINTIFF emphasizes that communications with DEFENDANT cannot be interpreted as consent to receive Telephone Solicitations, as such communication was solely for the purpose of ascertaining DEFENDANT'S identity. Under 47 C.F.R. § 64.1200(c)(ii), consent to solicit a number listed on the

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

National DNC Registry must be explicit and informed, requiring Prior Express Written Consent. Hence, any response made by PLAINTIFF to a Non-Consensual Telephone Solicitations from DEFENDANT does not meet the requirement of valid consent. Additionally, this principle aligns with the fruit of the poisonous tree doctrine, which holds that any consent obtained (perceived, implied, or otherwise) through unlawful means is inherently tainted, and, therefore, invalid. Just as evidence obtained through illegal search is inadmissible, any consent obtained through any Non-Consensual Telephone Solicitation cannot be considered valid under any existing laws.

## c. INVESTIGATION OF TELEPHONE SOLICITATIONS

41.   On 06-06-25, PLAINTIFF sent an Investigation & Cease and Desist letter (hereafter referred to as "ICD") dated 06-05-25 wherein DEFENDANT was provided the opportunity to explain and evidence consent of any kind from anyone for the Telephone Solicitations and formally demanded DEFENDANT: [A] "provide any and all documents, records, or other materials in your possession that evidence consent of any kind fromanyone, as well as any and all documents, records, or other materials in your possession that might support an assertion thatthe aforementioned Telephone Solicitations did not constitute a violation of the TCPA" [B] "provide a detailed account of the manner, source, and circumstances under which you acquired the Complainant's personal contact information" and [C] "produce the following documents evidencing compliance with 47 C.F.R. § 64.1200(d)(1)(2)(3), which you are required to do upon demand, and the failure to do so constitutes a violation of the TCPA: Written copy of your internal DNC policy; Written confirmation that your personnel are trained on this policy; and Written confirmation that you have added the Complainant to your internal DNC list".

42.   DEFENDANT failed to comply with these demands, including any evidence of compliance with 47 C.F.R. § 64.1200(d).

## d. DEFENDANTS TELEPHONE SOLICITATIONS ARE NOT EXEMPT

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

43. DEFENDANT violated 47 C.F.R. § 64.1200(c)(2) by failing to demonstrate that the Telephone Solicitations were an error and by failing to meet  the requirements necessary to not be held liable for their Non-Consensual Telephone Solicitations to a number listed with the National DNC Registry.

44. DEFENDANT'S Telephone Solicitations to PLAINTIFF were not necessitated for Emergency Purposes, as defined by 47 C.F.R. § 64.1200(f)(4).

45. DEFENDANT has no Established Business Relationship (EBR) with the PLAINTIFF, as defined by 47 C.F.R. § 64.1200(f)(5).

46. DEFENDANT has no Personal Relationship with the PLAINTIFF, as defined by 47 C.F.R. § 64.1200(f)(17).

47. DEFENDANT did not obtain PLAINTIFF'S Prior Express Written Consent, as outlined within 47 C.F.R. § 64.1200(c)(2)(ii).

**e. DEFENDANTS FAILED TO COMPLY WITH MINIMUM DNC REQUIREMENTS**

48. Pursuant to the minimum internal safeguard requirements set forth in 47 C.F.R. § 64.1200(d) and 47 U.S.C. § 227(c)(5), DEFENDANT failed to comply with their statutory obligations, as evidenced by the following conduct:

    A. PLAINTIFF made multiple Directives to Cease and Desist and later issued a formal written demand for DEFENDANT'S Internal DNC policy, which was never provided. DEFENDANT'S continued unlawful conduct evidences  that no such policy existed or, if it did, it was neither followed nor enforced.

    B. DFENDANT'S failure to process Directives to Cease and Desist evidences that their personnel are neither informed, nor trained to adequately  process  Directives to Cease and Desist.

    C. There can be no question that, based on the facts as pled here, DEFENDANT either failed to place PLAINTIFF'S number on its Internal DNC, or does not maintain such a list to begin

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

with. At minimum, the fact that DEFENDANT provided a written confirmation of PLAINTIFF'S Directives to Cease and Desist yet the Telephone Solicitations continued evidences that DEFENDANT does not maintain any procedures for having an Internal Do-Not-Call list, for otherwise, PLAINTIFF'S Directives to Cease and Desist would have been honored. Essentially, in this respect, PLAINTIFF pleads a variation of the doctrine of res ipsa loquitor, as such Directives to Cease and Desist, let alone "STOP" messages, are typically not dishonored, absent some negligent or willful conduct on the part of DEFENDANT. PLAINTIFF does not presently know the precise technical reason why their Directives to Cease and Desist were dishonored, despite explicit confirmation of the same, but pleads that they will be able to uncover the same through discovery, including expert discovery.

D. PLAINTIFF'S right against Non-Consensual Telephone Solicitations aligns with the statutory obligations imposed on Telemarketers, which require clear and prompt disclosure of the Telemarketer's identity, the seller's identity, and valid contact information at the onset of the Telephone Solicitations. *See 16 C.F.R. § 310.4(d)* and *47 C.F.R. § 64.1200(d)*. Additionally, PLAINTIFF has the right to identify and hold accountable any entity that fails to meet these mandated disclosures, thereby safeguarding against violations of telemarketing laws and any failure to comply with these disclosure requirements by a Telemarketer constitutes a violation of the Abusive Telemarketing Practices Act. *See 16 C.F.R § 310.*

E. DEFENDANT violated the record keeping requirements under 16 C.F.R § 310.5 by failing to keep the necessary records for their activities, as required by law. Specifically, DEFENDANT did not keep copies of scripts, promotional materials, and/or prerecorded messages used during Telephone Solicitations. DEFENDANT also failed to maintain detailed records of each Telephone Solicitations, such as the phone number used, the Telemarketer's name, the date

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

and time of the call, how long the call lasted, and whether the call was answered, dropped, or transferred. These failures are serious violations of the TSR, which requires Telemarketers to keep accurate and complete records for consumer protection. DEFENDANT has also not shown any proof of procedures or training to ensure they were following the record keeping rules, meaning they do not meet the conditions for an exemption under § 310.5(d).

**f. DEFENDANT'S TELEPHONE SOLICITATIONS HARMED PLAINTIFF**

49. The Telephone Solicitations constitute a nuisance that personally caused harm to PLAINTIFF, who asserted their right to privacy as established under the TCPA's National DNC, by preemptively opting out of Non-Consensual Telephone Solicitations, thereby reinforcing their expectation of privacy and further demonstrating the unlawful nature of the Non-Consensual Telephone Solicitations.

50. The Telephone Solicitations alleged herein: (A) harassed and annoyed PLAINTIFF; (B) invaded PLAINTIFF'S privacy and solitude; (C) tied up PLAINTIFF'S phone line, storage space, data, and bandwidth, rendering them unavailable for legitimate use, including during work, while driving, and performing other critical tasks.

## VI. CAUSE OF ACTION

**a. INITIATING TELEPHONE SOLICITATIONS TO DNC-REGISTERED NUMBERS WITHOUT PRIOR EXPRESS WRITTEN CONSENTIN, IN VIOLATION OF 47 C.F.R. § 64.1200(c)(2) AND 47 U.S.C. § 227(c)(5)**

51. PLAINTIFF repeats the prior allegations of this Complaint and incorporates them by reference herein.

52. At no time did PLAINTIFF provide Prior Express Written Consent to receive Telephone Solicitations from DEFENDANT. PLAINTIFF had no prior Business Relationship with DEFENDANT and never consented to such communications.

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

53. By DEFENDANT'S continued Telephone Solicitations to PLAINTIFF without the legally required Prior Express Written Consent, DEFENDANT did not only disregard established standards provided by the TCPA but also infringes upon the PLAINTIFF'S right to privacy.

54. Each Telephone Solicitations placed to PLAINTIFF'S numbers listed on the National DNC without the required Prior Express Written Consent constitutes a separate violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

55. As a result of DEFENDANT'S and DEFENDANTS JOHN DOE 1-10'S, and/or their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on their behalf, violations of the TCPA, 47 U.S.C. § 227, PLAINTIFF is presumptively entitled to an award of between $500 and $1,500 in damages for each and every Telephone Solicitation.

56. PLAINTIFF is also entitled to, and does, seek injunctive relief prohibiting DEFENDANT and DEFENDANTS JOHN DOE 1-10, and/or their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on their behalf, from making Telephone Solicitations to telephone numbers listed on the National DNC, except for emergency purposes, in the future.

**b. FAILURE TO INSTITUTE PROCEDURES MEETING THE MINIMUM STANDARDS, IN VIOLATION OF 47 C.F.R. § 64.1200(d) AND 47 U.S.C. § 227(c)(5)**

57. PLAINTIFF repeats the prior allegations of this Complaint and incorporates them by reference herein.

58. DEFENDANT and DEFENDANTS JOHN DOE 1-10 failed to:

    A. Maintain an Internal DNC policy that is compliant with the law, and provide a written copy thereof;

    B. Train all personnel engaged in any aspect of telemarketing in the existence of, and use of, the internal DNC policy;

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

C. Provide an accounting of when the Complainant's Directive(s) to Cease and Desist was recorded;

D. Provide the identification of callers and telemarketers script, identifying the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted;

59. DEFENDANT'S failure to adopt and honor the minimum internal safeguards required by federal regulation constitutes a violation of 47 C.F.R. § 64.1200(d) and is actionable under 47 U.S.C. § 227(c)(5).

60. As a result of DEFENDANT'S, and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on DEFENDANT'S behalf, violations of the TCPA, 47 U.S.C. § 227, PLAINTIFF is presumptively entitled to an award of between $500 and $1, 500 in damages for each Telephone Solicitations. PLAINTIFF is also entitled to, and does, seek injunctive relief prohibiting DEFENDANT, and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on DEFENDANT'S behalf, from making telemarketing calls to telephone numbers listed on the National DNC, except for emergency purposes, in the future.

## c. PERSONAL LIABILITY UNDER THE TCPA

61. PLAINTIFF repeats the prior allegations of this Complaint and incorporates them by reference herein.

62. DEFENDANTS JOHN DOE 1-10, exercised direct control over, authorized, ratified, and /or personally participated in the conduct giving rise to the unlawful Telephone Solicitations alleged herein. They were actively involved in and/or had full knowledge of the telemarketing operations, and failed to take any reasonable steps to prevent or remedy the violations of the TCPA, despite having both the legal responsibility and fiduciary duty to do so. As a result of their affirmative acts, omissions, and/or willful disregard of legal obligations, DEFENDANTS JOHN DOE 1-10 are

personally liable for Violations of the National DNC and the minimum telemarketing standards set forth in 47 C.F.R. § 64.1200. *See case law Dawson v. Porch.Com (W.D. Wash. 2024)*. Moreover, DEFENDANTS JOHN DOE 1-10 stood to personally profited from the unlawful conduct, further underscoring their responsibility and eliminating any shield of corporate immunity. Accordingly, their actions support the imposition of direct personal liability under applicable federal and contractual law.

## VII: PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF ASHER BRONSTIN respectfully prays for judgment against DEFENDANT EZ ADVANCE LLC and DEFENDANTS JOHN DOE 1-10, jointly and severally, as follows:

1. That the Court enter a judgment awarding PLAINTIFF statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

2. An order declaring that the actions, as set out above, violate the TCPA; and

3. For equitable and injunctive relief, permanently enjoining DEFENDANTS', their officers, representatives, affiliates, and all persons acting on their behalf from:

    A. Initiating further Telephone Solicitations to PLAINTIFF without Prior Express Invitation or Permission.

    B. Initiating Telephone Solicitations to any number listed on the National DNC without full compliance with TCPA and TSR regulations.

    C. Engaging in telemarketing without a compliant written DNC policy, adequate training of personnel on said policy, appropriate maintenance and enforcement of Internal DNC, and truthful identification procedures, in full compliance with the TCPA and its rules and regulations.

4. Such other relief as the Court deems just and proper.

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure, PLAINTIFF demands trial by jury as to all claims so triable.

## IX. CERTIFICATION AND CLOSING

I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11 of the Federal Rule of Civil Procedure.

Further, I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATED: 05-22-26

Respectfully Submitted,

*Asher Bronstin*

ASHER BRONSTIN
IN PRO PER
211 S State College Blvd #10177,
Anaheim, CA 92806
Email: Legal@BronstinHoldings.com
Phone Number: (949) 996-7205

21

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND DAMAGES